UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY E. GORDON,

        Plaintiff,

v.                   Case No. 1:14-CV-0541 (GTS)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____

APPEARANCES:              OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON   STEVEN R. DOLSON, ESQ.
 Counsel for Plaintiff
126 North Salina St., Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.      HEETANO SHAMSOONDAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II Special Assistant U.S. Attorney
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

   Currently before the Court, in this Social Security action filed by Timothy E. Gordon ("Plaintiff") against the Acting Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13, 15.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

Plaintiff was born on March 14, 1967. He was in special education classes, including speech therapy, during school and obtained a high school diploma. Plaintiff's employment history consists of work as a dish room supervisor, line cook and janitor. Generally, Plaintiff's alleged disability consists of left hip arthritis. His alleged disability onset date is September 15, 2008, and his date last insured is December 31, 2013.

   B.      **Procedural History**

On July 18, 2011, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 11, 2012, Plaintiff appeared before the ALJ, Dale Black-Pennington. (Tr. 37-66.) On October 26, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 9-24.) On March 10, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.      **The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (Tr. 14-20.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 14.) Second, the ALJ found that Plaintiff's degenerative joint disease of the right hip is a severe impairment. (Tr. 14-15.) Third, the ALJ found that Plaintiff's impairment does not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (Tr. 15.) In so doing, the

ALJ considered the Listings in section 1.00. (*Id*.) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[1] except that he can stand and walk for thirty minutes at a time, sit for up to two hours at a time, and can perform occasional bending, stooping or squatting. (*Id*.) The ALJ further noted that Plaintiff had trouble reading long words and difficulty with adding and subtracting. (Tr. 15-19.) Fifth, the ALJ found that Plaintiff is unable to perform his past relevant work. (Tr. 19.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 19-20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ committed reversible error by failing to properly assess his need for an assistive device. (Dkt. No. 13 at 3-4 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in failing to properly assess his nonexertional impairments. (*Id.* at 5-7.)

### B. Defendant's Arguments

---

[1] According to the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

3

In response, Defendant makes two arguments. First, Defendant argues that the ALJ properly assessed Plaintiff's need for an assistive device. (Dkt. No. 15 at 5-7 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ's RFC is supported by substantial evidence. (*Id.* at 7-12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or if the determination was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is

5

> afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Erred by Failing to Properly Assess Plaintiff's Need for an Assistive Device

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 5-6 [Def.'s Mem. of Law].) To those reasons, the Court would add only the following analysis.

Plaintiff argues that the ALJ failed to consider his need for the use of a cane to ambulate, which allegedly reduces his ability to perform light work. (Dkt. No. 13 at 3-4 [Pl.'s Mem. of Law].) In support of this argument, Plaintiff cites Social Security Ruling 96-9p. (*Id.* at 3.) As that Ruling explains, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i .e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7. Courts have held that the burden to establish medical necessity for the use of an assistive device rests with a claimant. *See Dahl v. Comm'r*, 12-CV-0302, 2013 WL 5493677, at *5 (N.D.N.Y. Oct. 1, 2013) (citing *Howze v. Barnhart*, 53 F. App'x 218, 222 [3d Cir. 2002]); *see also Tripp v. Astrue*, 489 F. App'x 951, 955

(7th Cir. 2012) (holding that claimant must provide an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010).

In *Dahl*, a claimant made a similar argument, asserting that the ALJ failed to properly consider his need to use a cane. *Dahl*, 2013 WL 5493677, at *4. Specifically, the claimant argued that the ALJ failed to follow SSR 96-9p's requirements "by not taking into account Mr. Dahl's use of a cane when determining his RFC." (*Id.*) The court found this argument to be unpersuasive, noting that the claimant failed to cite any medical evidence of record corroborating his assertion and instead relied on his own testimony, which was insufficient. (*Id.* at *5.)

Similarly, in the present case, Plaintiff did not submit medical documentation demonstrating his need for a cane, as required by SSR 96-9p. Rather, Plaintiff argues "there is no indication in the record from any medical source that the cane was not medically necessary or required." (Dkt. No. 13 at 4 [Pl.'s Mem. of Law].) In addition, Plaintiff relies on his testimony where he describes having a limp and needing a cane both before and after his hip replacement surgery due to his osteoarthritis. (Tr. 55-57.) Moreover, Plaintiff relies on his testimony regarding the many limitations and difficulties he allegedly experiences on a daily basis. (Tr. 50-56.) However, Plaintiff also testified that he received his cane from Medicaid and that it was not prescribed by a doctor. (Tr. 50, 209.) More importantly, Plaintiff fails to cite any medical evidence of record establishing his need for a hand-held assistive device. As noted above, it is Plaintiff's burden, not the ALJ's, to establish the medical necessity for the use of his cane. Accordingly, Plaintiff has failed to carry his burden under the provisions of SSR 96-9p and therefore cannot demonstrate any error thereunder.

Notwithstanding this failure, the ALJ considered Plaintiff's testimony in determining the extent of Plaintiff's limitations and his alleged need to ambulate with a cane. (Tr. 16-18.) However, the ALJ also considered evidence from medical records indicating Plaintiff's limitations and pain are not as severe as Plaintiff described. (Tr. 17-19.) Specifically, treatment notes from Plaintiff's orthopedist, taken after Plaintiff's right hip replacement surgery, revealed that Plaintiff had no complaints and has "had excellent relief of his preoperative pain. He is working on range of motion with therapy and ambulating without any assistive devices. He is sleeping well and requires no medication for pain control." (Tr. 17, 378.) Upon an examination of Plaintiff, the orthopedist also noted that Plaintiff walked up and down the hall "with no assistive device and without obvious limp." (*Id*.) The ALJ further discussed the orthopedist's treatment notes taken on September 6, 2012, which was five days before Plaintiff's hearing before the ALJ. (Tr. 17-18.) Significantly, these notes state that Plaintiff had no pain in his right hip, had regained an active lifestyle, and has been riding his bike and walking without difficulties. (Tr. 18, 410.)

Clearly, the medical record evidence and Plaintiff's testimony regarding his limitations are in conflict. In such an event, the Court defers to the ALJ's resolution of conflicting evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Salmini v. Astrue*, 371 F. App'x 109, 113 (2d Cir. 2010) ("It is the function of the ALJ, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."); *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012). Furthermore, "[w]here, as here, the Commissioner's decision 'rests on adequate findings supported by evidence having rational

probative force, [the Court] will not substitute [its] judgment for that of the Commissioner.'" *Schlichting*, 11 F. Supp. 3d at 204 (quoting *White v. Comm'r*, 06-CV-0564, 2008 WL 3884355, at *11 [N.D.N.Y. Aug. 18, 2008]).

Accordingly, the Court finds that Plaintiff failed to meet his burden in establishing the medical necessity for his use of an assistive device. As a result, the ALJ's decision not to incorporate the use of a cane into his RFC assessment is supported by substantial evidence. *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002); *Canabush v. Comm'r*, 13-CV-0429, 2015 WL 1609721, at *5 (N.D.N.Y. Apr. 10, 2015) (holding that "ALJ did not commit reversible error when he failed to incorporate plaintiff's use of an assistive device and/or cane into the RFC" when plaintiff failed to establish medical necessity for such a device); *accord Wilson v. Comm'r*, 13-CV-0643, 2014 WL 4826757, at *10-11 (N.D.N.Y. Sept. 29, 2014); *Williams v. Colvin*, 13-CV-2158, 2014 WL 4918469 (M.D. Pa. Sept. 30, 2014); *Halama v. Comm'r*, 12-CV-1859, 2013 WL 4784966, at *8 (N.D. Ohio Sept. 5, 2013).

### B. Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Nonexertional Impairments in Determining Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 7-12 [Def.'s Mem. of Law].) To those reasons, the Court would add only the following analysis.

Plaintiff argues that the ALJ failed, during the RFC analysis, to take into account his alleged limitations regarding his ability to kneel. (Dkt. No. 13 at 5-6 [Pl.'s Mem. of Law].) Specifically, Plaintiff cites the medical source statement provided by consultative examiner, Dr. Kautilya Puri, who opined that Plaintiff had mild to moderate limitations in squatting, bending, stooping, and kneeling. (*Id*. at 5.) However, as Plaintiff notes, the ALJ accounted for all of

9

these limitations except for kneeling. (Tr. 15.) Plaintiff appears to argue that the ALJ should have included this limitation because the ALJ accorded Dr. Puri's opinion great weight. (Dkt. No. 13 at 5 [Pl.'s Mem. of Law].) Moreover, Plaintiff argues that, when his alleged kneeling limitations are taken into account with other extertional and non-extertional impairments, they further erode the occupational base for light work. *(Id.)*

Finally, Plaintiff argues the ALJ was too vague when he posed a hypothetical question to a vocational expert ("VE") regarding Plaintiff's limitations to read long words and add and subtract. (*Id.*) Specifically, the ALJ requested the VE to assume an individual with limitations in being able to "read large words [and] difficulty with adding and subtracting." (Tr. 62.) According to Plaintiff, it is uncertain what the ALJ meant by a long or "large" word and, therefore, "[i]f a long word is anything more than a one syllable word, then [Plaintiff] would be precluded from all three occupations to which the VE testified." (Dkt. No. 13 at 6 [Pl.'s Mem. of Law].) Similarly, Plaintiff argues that it is not clear whether the ALJ was limiting Plaintiff to professions which do not require performing addition and subtraction. (*Id.*) If these professions do require adding and subtracting, then Plaintiff contends it is unclear whether he would be required to perform "simple single digit addition and subtractions," or something more complex. (*Id.* at 7.) Plaintiff argues this is problematic because these ambiguities allegedly create potential conflicts with the Dictionary of Occupational Titles ("DOT"). (*Id.* at 6-7.)

RFC is defined as

> what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. *See* 20 C.F.R. § 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work. *See* 20 C.F.R. § 404.1513(c)(d). Moreover, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). It is important to note that, when determining the Plaintiff's RFC, the ALJ is required to consider all of Plaintiff's medically determinable impairments including those that are not severe. *See Tudor v. Comm'r of Soc. Sec.*, 12-CV-2795, 2013 WL 4500754, at *11 (E.D.N.Y. Aug. 21, 2013) (citing 20 C.F.R. § 404.1545[a][2]).

Furthermore, at Step Five, "the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520[a][4][v]; and 416.920[a][4][v]). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre*, 758 F.3d at 151. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record

evidence to support the assumption[s] upon which the vocational expert based his opinion' *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved." *Id*. (citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 [2d Cir. 1981]); *see also Futia v. Astrue*, 06-CV-0961, 2009 WL 425657, at *9 (N.D.N.Y. Feb. 19, 2009).

Here, the ALJ determined that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except stand and walk for thirty-minute periods, sit for up to two-hour periods, and perform occasional bending, stooping, or squatting. (Tr. 15.) The ALJ's RFC finding is supported by the opinions of Dr. Puri, a consultative examiner, and Dr. Gunther, Plaintiff's orthopedist. Specifically, Dr. Puri opined that Plaintiff did not have any objective limitation to communication or fine motor/gross activities. (Tr. 314.) As discussed previously, Dr. Puri found Plaintiff had mild to moderate limitations to squatting, bending, stooping, and kneeling, with no objective limitations to his gait or activities of daily living. (*Id*.) Dr. Puri also noted that Plaintiff appeared to be in no acute distress, did not use an assistive device, did not require assistance in changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (Tr. 313.) Finally, Dr. Puri found Plaintiff had full range of motion of his hips, knees, and ankles, except for his right hip. (*Id*.) The ALJ accorded great weight to Dr. Puri's opinion and findings but noted that Dr. Puri examined him prior to his hip replacement surgery. (Tr. 19.)

Next, the ALJ discussed the treatment notes of Dr. Gunther, who treated Plaintiff during the relevant period, including after Plaintiff's right hip replacement surgery. (Tr. 17-18.) The ALJ also accorded great weight to Dr. Gunther's opinion and findings. (*Id*.) As discussed above,

Dr. Gunther reported that Plaintiff's hip replacement surgery alleviated a lot of his complaints. (Tr. 17.) Once again, Dr. Gunther reported that Plaintiff has had "excellent relief of his preoperative pain. He is working on range of motion with therapy and is ambulating without any assistive devices. He is sleeping well and requires no medication for pain control." (*Id.*) Dr. Gunther advised Plaintiff that he could continue to enjoy his regular activities except for running. (Tr. 18.) On September 6, 2012, five days prior to the hearing before the ALJ, Plaintiff visited Dr. Gunther, who indicated in his treatment notes that Plaintiff "had no hip pain and had regained an active lifestyle including riding his bike and no reported difficulty walking." (*Id.*)

Although Plaintiff contends that the ALJ erred by failing to account for his alleged limitations in his ability to kneel, an ALJ has discretion to evaluate the evidence and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the symptoms alleged. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (stating that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Mitchell v. Astrue*, 09-CV-6301, 2010 WL 3070094, at *3 (W.D.N.Y. Aug. 4, 2010) (explaining that the ALJ's role is "to weigh the totality of the evidence in the record, both medical and non-medical, in order to resolve the conflicts and make a proper RFC assessment"); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). While the ALJ gave great weight to the opinions of both Dr. Puri and Dr. Gunther, the ALJ also noted that Dr. Puri's opinion was rendered prior to Plaintiff's hip replacement surgery. (Tr. 19.) Therefore, because Dr. Puri did not have an opportunity to examine Plaintiff

after his surgery, it was rationale for the ALJ to afford more weight to Dr. Gunther's medical records, which indicate that Plaintiff's symptoms significantly improved following his hip replacement. (Tr. 18-19.) *See also Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (holding that "a consulting physician's opinions or report should be given limited weight . . . because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'") (quoting *Torres v. Bowen*, 700 F. Supp. 1306, 1312 [S.D.N.Y. 1988]). Accordingly, this Court finds that the ALJ's decision not to include the alleged limitations in Plaintiff's ability to kneel in his RFC is supported by substantial evidence.

Finally, Plaintiff's argument regarding the use of allegedly vague terms in the ALJ's hypothetical posed to the VE is unpersuasive. First, it is well established that Plaintiff bears the burden of proof at steps one through four of the sequential evaluation, including the burden to prove his RFC. *See Weather v. Astrue*, 32 F. Supp. 3d 363, 369 (N.D.N.Y. 2012); *Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 242 (N.D.N.Y. 2013). Here, the ALJ inquired about Plaintiff's education during the hearing and Plaintiff testified that he was in a special education program when he completed high school. (Tr. 44-45.) Plaintiff also stated he had some problems with reading and pronouncing words but was able to write. (*Id.*) Similarly, Plaintiff testified he had "a little bit" of difficulty with performing higher math, such as division and calculus, but can calculate the change he is owed when making purchases at a store. (Tr. 44-45.)

Significantly, Plaintiff did not submit his school records until they were requested by the ALJ. (Tr. 65.) This resulted in the record being left open approximately fourteen (14) days after the hearing was completed. (*Id.*) Nonetheless, the ALJ accommodated Plaintiff during the

14

hearing by presenting these nonexertional limitations to the VE. (Tr. 62.) Once the ALJ had an opportunity to review Plaintiff's school records, he determined that the records did not support a learning disability or difficulty with English or math. (Tr. 16.) Indeed, upon review of Plaintiff's transcript, it is evident that Plaintiff attained the following final averages in "Language Arts" during his four years of high school: 90.25, 83.75, 78.50, and 77.30. (Tr. 257.) In "Math," Plaintiff received the following final averages: 80.00, 79.00, 85.75, and 86.25. (*Id.*) Plaintiff graduated with a class rank of 135 out of 410 students. (*Id.*) Accordingly, this Court agrees with the ALJ that Plaintiff's school records do not support a learning disability or difficulty in these subjects. Therefore, any argument that Plaintiff's alleged limitations in math and English would further narrow the amount of potential jobs he would be qualified for is unpersuasive because there is substantial evidence that Plaintiff does not suffer from such limitations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 1, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge